|! FITZSIMMONS, Judge,
dissenting with reasons.
I respectfully dissent from the majority’s affirmation of the trial court’s writ of mandamus on the basis that DEQ was under a mandatory duty to review Doré’s *299 plan. To follow the logic of the majority will result in a state of “Ananda”[1] for Doré. Pursuant to the precepts enunciated in La. R.S. 30:2276, DEQ correctly espoused that La. R.S. 30:2276G(1) does not apply to the instant factual scenario because no initial demand by the Secretary of DEQ occurred. The application of both sections 2276G(1) and 2276G(3) is further limited to a situation involving any party who has been found liable in court for discharge and who has borne all or part of the costs of remediation. In order to recover costs in such an instance, prior approval of the plan for remediation action must be obtained from the secretary, absent an emergency. The factual prerequisite of a finding of liability in a court is lacking in the instant matter. Thus, La. R.S. 30:2276G(3) is inapposite to the claim asserted by Doré.
Even if Doré had submitted a claim with the Secretary of DEQ for a voluntary remedial action pursuant to La. R.S. 30:2288.1, i.e., in the capacity of a responsible party seeking exemption from liability, no legal provision in the statute mandates DEQ to review the plan. Moreover, DEQ’s referral of the proposal to fythe Office of Conservation of DNR satisfied any demands for compliance instituted by Doré.
The Commissioner of Conservation is expressly. empowered by statutory fiat with jurisdiction and authority over all persons and property in controversies involving conservation of oil and gas resources. Louisiana Revised Statute 30:1D provides: “The disposal of any waste product into the subsurface by means of a disposal well and the regulation of all surface and storage waste facilities incidental to oil and gas exploration and production, shall be within the jurisdiction of the department [of Conservation].” Pursuant to the commissioner’s primary duty to prevent waste of the state’s mineral resources, his responsibilities specifically revolve around issues of conservation of oil and gas resources. La. R.S. 30:4A; Yuma Petroleum Company v. Thompson, 98-1399, 98-1410, p. 5 (La.3/2/99), 731 So.2d 190, 193. Moreover, in accordance with La. R.S 30:4C(l)(iv) and 30:4C(16)(a), the commissioner possesses the jurisdiction and authority to establish rules and regulations associated with site cleanup and all surface and storage waste facilities incidental to oil and gas exploration and production. Thereafter, La. R.S. 30:74 addresses problems associated with abandoned oilfield waste sites and the cleanup process.[2]
*300 | .«¡Statutes are to be interpreted in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature in its passage. City of Pineville v. American Federation of State, County, and Municipal Employees, AFL-CIO, Local 3352, 2000-1983, p. 4 (La.6/29/01), 791 So.2d 609, 612. Where two statutes address the same subject matter, they should be harmonized, if possible. If there is a conflict, the statute directed at the specific issue at hand prevails as an exception to the statute more general in character. Id. While the secretary of DEQ possesses the overall authority and responsibility for inactive and abandoned hazardous waste sites of all types, the legislature has purposely enacted statutes that specifically address hazardous waste related to the drilling of oil and gas. The power and duty for conserving the oil and gas resources within Louisiana, as well as overseeing cleanup of waste sites, are essentially vested in the office of the Commissioner of Conservation, Department of Conservation. Hunt Oil Company v. Batchelor, 644 So.2d 191, 196-197 (La.1994).
Moreover, the Secretary of DEQ’s role in reviewing a party’s proposal for cleanup and restoration remains discretionary. It is axiomatic that discretionary action by a public official falls outside of the parameters of a writ of mandamus. Penalber v. Blount, 405 So.2d 1378, 1379 (La.App. 1st Cir.1981), writ denied, 407 So.2d 1189 (La. 1981). In contrast, it should be noted that the provisions of La. R.S. 30:74 establish a mandatory requirement that an owner notify the office of conservation of the existence of oilfield waste. See n. 3, supra. A fortiori, the Secretary of DEQ possessed the prerogative to refer the oil-related matter initiated by Doré to the Office of Conservation.
For these reasons, it is respectfully submitted that the writ of mandamus should be reversed.

. Origin: Sanskrit. In Sikhism, Buddhism, and Hinduism, "Ananda” signifies the realm of Paradise, or the achievement of bliss. An-anda was also the name of one of . Buddha’s disciples.

. Section A(l) and (2) of La. R.S. 30:74 states the following:
(1) Whenever any responsible person, owner, or operator of any abandoned waste site obtains information that indicates that oilfield waste is spilling, discharging, or otherwise escaping into, or on any land or water without appropriate authorization or permit, or is being treated, stored, handled, or disposed of in a manner contrary to applicable regulations of the commissioner, such person shall notify the office of conservation in accordance with regulations to be adopted.
(2) Upon receipt of the information required to be provided in Paragraph A(l) of this Section, the commissioner may order any responsible owner, operator, or person to take samples, monitor, or take action at the abandoned waste site to ■ ascertain the nature and extent of any waste or discharge, or hazard. The commissioner, upon failure or refusal by the responsible person, operator, or owner to comply with the orders, may undertake such activities and investigate the abandoned waste site samples to be analyzed, and may expend monies available for these purposes. (Underlining added.)